IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KELLI D. REJNIAK, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 17-1182 |
| ) | Magistrate Judge Maureen P. Kelly |
| v. ) | |
| ) | Re: ECF No. 51 |
| MEGAN J. BRENNAN, Postmaster General ) | |
| of the United States, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

**KELLY, Magistrate Judge**

### I. INTRODUCTION

Plaintiff Kelli D. Rejniak ("Plaintiff") has brought this action against Megan J. Brennan, the Postmaster General of the United States ("Defendant"), pursuant to the Age Discrimination and Employment Act (the "ADEA"). Plaintiff's claim arises out of allegations that Defendant retaliated against Plaintiff because she filed a complaint alleging discriminatory conduct by employees of the United States Postal Service (the "USPS") in 2016.

Presently before the Court is Defendant's Renewed Motion for Summary Judgment ("Motion for Summary Judgment"). ECF No. 51. For the reasons that follow, the Motion for Summary Judgment is granted in part and denied in part.[1]

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties voluntarily consented to having a United States Magistrate Judge conduct proceedings in this case, including the entry of a final judgment. ECF No. 22.

## II. FACTUAL AND PROCEDURAL BACKROUND

### A. Factual Background

Plaintiff's claims arise out of alleged age-related[2] discrimination and retaliation that Plaintiff suffered while employed by the USPS as a City Letter Carrier. Plaintiff has worked out of the Allison Park Post Office for approximately twenty-four years. ECF No. 40 ¶ 1. During the relevant time period, from approximately the summer of 2016 to summer of 2017, Plaintiff reported to Richard Williams ("Williams") as her first-line supervisor and to Jamie Rinderle ("Rinderle") as her second-line supervisor. ECF No. 35 ¶¶ 5, 6. Williams had been assigned to the Allison Park Post Office in November 2015 to a temporary supervisor position. Id. ¶ 4.

Plaintiff claims that her mail carrier route was "overburdened," or in other words, required more deliveries than could be accomplished in the time allotted for her to complete the route. As a result, she claims she was unable to complete her route in the eight hours permitted. Id. ¶¶ 19, 20.

Plaintiff testified during her deposition that Rinderle and other supervisory staff utilize a system referred to as the "DOIS" (Delivery Operation Information System) in order to estimate the time needed for a letter carrier to complete her assigned route. Id. ¶ 47. Through the DOIS, an individual enters the amount of mail to be distributed in a day, and the program calculates an estimated route duration. Id. ¶ 48. According to Plaintiff, Rinderle and Williams relied on the DOIS to determine whether Plaintiff required additional time to complete her route. Id. ¶ 50.

When a letter carrier is unable to complete her route in the time allotted, the carrier can request permission to work overtime. ECF No. 35 ¶ 21. A supervisor determines whether to grant the letter carrier's overtime request. Id. ¶ 22. Letter carriers often submit an overtime request via a phone call or text message from the road. Id. ¶ 23. Although the parties dispute

---

[2] Plaintiff was born in 1964 and was 52 years old during the relevant time period. ECF No. 26 ¶ 7.

whether letter carriers were always required to submit a "3996 Form" to request overtime under these circumstances, they agree that Rinderle generally required letter carriers to submit this form in connection with such requests. Id. ¶ 23; ECF No. 39 ¶ 23.

During the relevant time period, Plaintiff requested overtime to complete her route "a couple" times per week. ECF No. 35 ¶ 25. Plaintiff regularly took in excess of her approved time to complete the route, which resulted in verbal reprimands. Id. ¶ 27.

Plaintiff claims that Rinderle regularly "harassed" her about not completing her route within the eight hours allotted. Id. ¶ 26. She further testified that Rinderle and Williams used a "harsh tone" with her, and that Rinderle was "rude" in tone and disrespectful towards Plaintiff. Id. ¶¶ 54, 55. Plaintiff testified that she removed herself from the overtime list for the period of April to June 2017 and used paid vacation days to avoid the work environment. ECF No. 40 ¶ 6. She further testified that she saw a therapist to cope with stress and anxiety arising out of Rinderle's supervision. Id.

1. **Route Inspection**

A letter carrier may receive a route inspection, which involves observation and analysis of a letter carrier's route, if she overruns on a route for more than sixty days. ECF No. 35 ¶ 31. This observation period lasts one week. Id. ¶ 33.

In January or February 2017, Plaintiff was granted a route inspection at her request. Id. ¶ 30. Steven Hrip ("Hrip"), a Site Lead on the Route Exam Team, was scheduled to observe Plaintiff beginning on February 7, 2017. Id. ¶ 32; ECF No. 36-13. On February 7, 2017, Hrip observed Plaintiff completing her route, and she completed it within her allotted 8 hours. ECF No. 35 ¶ 34.

A route observer did not accompany Plaintiff the next two days, on February 8 and 9, 2017. Id. ¶ 35. Plaintiff did not complete her route in the time allotted on these two days, and took 1.96 and 1.27 additional hours, respectively, over her allotted time.

Although Hrip's observation was scheduled to resume on February 10, 2017, Hrip cancelled the route inspection. Id. ¶ 37. Hrip stated that he cancelled Plaintiff's route inspection because of concerns over the accuracy of the data collected. Id. ¶ 37. In particular, Hrip pointed to Plaintiff's failure to submit a Form 3996 on February 8 and 9, 2017 requesting overtime or auxiliary assistance, which resulted in management assuming that she would complete her route in 8 hours. Id. ¶ 39. Hrip also noted that Plaintiff failed to record the time in which she counted the mail on a required form, which would result in data inaccuracy. Id. In addition, Hrip "felt the data . . . from the first 3 days of the route was not accurate and could not be utilized to adjust her route" due to the discrepancy between her route times on February 7, 2017, when accompanied by a route observer, as opposed to February 8 and 9, 2017, when she completed her route alone. Id. Hrip indicated that he advised Plaintiff of the reason for cancelling the route inspection, and she "offered no valid reason" for the disparity in her route times between February 7 and 9, 2017, as she acknowledged that the mail volumes were similar. Id. ¶ 40.

Plaintiff testified that, on one of the days of her scheduled route inspection, winter weather conditions were severe, mailboxes were frozen, schools were cancelled due to weather, and the inspector who was scheduled to ride with her was unable to make it to the post office in order to accompany her. ECF No. 40 ¶ 15. She further testified that Rinderle refused to allow Plaintiff to perform a mail count required as part of the route inspection process, and that she believed Rinderle had influenced the Route Examination Team's decision to terminate her route inspection because Rinderle had spoken with Hrip beforehand. Id. ¶¶ 16, 17; ECF No. 35 ¶ 38.

4

Plaintiff testified that another letter carrier, Missy Bailey ("Bailey"), received a route adjustment based on a route inspection and receives additional assistance to complete her route. ECF No. 40 ¶¶ 19, 20. Plaintiff asserts that Bailey's route, which is on the opposite side of the Route 8 corridor from Plaintiff's route, is approximately the same length and has similar traffic conditions to Plaintiff's route. Id. ¶ 21.

### 2. Letter of Warning

On February 27, 2017, Rinderle issued Plaintiff a disciplinary letter of warning (the "Letter of Warning"), which stated in part:

> On February 8th, you failed to submit a PS Form 3996 to alert management you needed to work more than eight hours and you expanded your time by one hour and 57 minutes without authorization. On February 9th, you failed to submit a PS Form 3996 to alert management you needed to work more than eight hours and you expanded your time by one hour and 16 minutes without authorization. On February 13th, your PS Form 3996 was approved for 45 minutes. You expanded your time without authorization by 99 minutes.
>
> At your interview you did not provide a reasonable explanation for not fulfilling your reporting requirements.
>
> . . . You must demonstrate adherence to Postal regulations. Future deficiencies will result in more severe disciplinary action being taken against you. Such actions may include suspensions or removal from the Postal Service. If you do not understand the reason for this letter, or if you are having problems that I am not aware, I urge you to see me as soon as possible.
>
> You have the right to appeal the issuance of this disciplinary action under the grievance/arbitration procedure as set forth in Article 15 of the National Agreement within 14 days of your receipt of his notice.

ECF No. 35 ¶¶ 41-43; ECF No. 36-15.

The Letter of Warning was, itself, the disciplinary action and no additional penalties were imposed. ECF No. 35 ¶ 44. Plaintiff believes that one instance of sick leave disapproval may also have been imposed as an additional penalty. Id.

Plaintiff testified that her former supervisors did not require her to complete 3996 Forms, and that she did not know Rinderle required these forms until receiving the Letter of Warning on February 27, 2017. ECF No. 35 ¶ 24. Plaintiff also alleges that letter carriers other than Plaintiff were not disciplined by Rinderle for failing to submit 3996 Forms. Plaintiff testified that Bailey was not disciplined for failing to fill out a 3996 Form. ECF No. 40 ¶ 9. Mary Ann Kurtz ("Kurtz") testified she did not complete 3996 Forms, and that Rinderle did not discipline her for her failure to do so. Id. ¶ 14. Plaintiff testified that she recovered 3996 Forms from the trash that had not been submitted, and Kurtz testified that she also observed 3996 Forms in the trash. Id. ¶ 10. While working at the Allison Park Post Office, Rinderle did not recall issuing a letter of warning for unsatisfactory performance to anyone other than Plaintiff. ECF No. 41-14 at 71.

### 3. EEO Complaint

On December 5, 2016, Plaintiff filed a formal complaint with the United States Postal Service Equal Employment Opportunity office ("EEO") (the "EEO Complaint"), alleging that she suffered discrimination and harassment as result of her age and asserting that she had been retaliated against as a result of prior discrimination complaints she filed with the EEO between 2009 and 2013. ECF No. 35 ¶¶ 87-89.

On March 3, 2017, Plaintiff amended her EEO Complaint to add the following two additional claims:

- On February 27, 2017, she was issued a Letter of Warning.
- On, or around, March 1, 2017, she was denied a route inspection.

Id. ¶ 91; ECF No. 36-7.

The EEO conducted an investigation and, on April 7, 2017, reported the results of the investigation to Plaintiff, giving her 30 days within which to request a hearing before an

Administrative Judge of the Equal Employment Opportunity Commission or a final agency decision without a hearing. ECF No. 35 ¶ 92; ECF No. 36-8. A final agency decision was issued in accordance with 29 C.F.R. § 1614.110(b) on June 13, 2017, concluding that "the evidence does not support a finding that the complainant was subjected to discrimination as alleged." ECF No. 35 ¶ 93; ECF No. 36-9. Thereafter, Plaintiff filed her federal Complaint in the instant action. ECF No. 1.

### B. Procedural History

Plaintiff filed her Complaint in this action on September 8, 2017, asserting claims pursuant to the ADEA and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*. ECF No. 1.

On May 24, 2018, Plaintiff filed the operative First Amended Complaint ("Amended Complaint"). In the Amended Complaint, Plaintiff eliminated her claims pursuant to Title VII and asserted two claims under the ADEA: (1) a disparate treatment/disparate impact and hostile work environment claim, alleging that Plaintiff was subjected to acts of harassment and discipline based on her age (Count I); and (2) a retaliation claim alleging that Defendant created a hostile work environment in retaliation for protected activity that Plaintiff engaged in by filing a complaint with the EEO (Count II). ECF No. 26.

Following the close of discovery, on November 13, 2018, Defendant filed a Motion for Summary Judgment and Brief in Support, ECF Nos. 33 and 34, accompanied by a Concise Statement of Material Facts and appendix in support, ECF Nos. 35 and 36.

On January 2, 2019, Plaintiff filed a Brief in Opposition to Plaintiff's Motion for Summary Judgment and Response to Defendant's Concise Statement of Material Facts. ECF

Nos. 38 and 39. Plaintiff also filed a Concise Statement of Material Facts and supporting appendix, ECF Nos. 40 and 41.

On February 15, 2019, Defendant submitted a Reply Brief in support of her Motion for Summary Judgment and a Response to Plaintiff's Concise Statement of Material Facts. ECF Nos. 45 and 46.

The instant action was reassigned to the undersigned on June 13, 2019. Thereafter, this action was administratively stayed and closed on June 17, 2019, and the stay was lifted on August 1, 2019.[3] ECF Nos. 47 and 54. On July 29, 2019, the parties submitted the instant Renewed Motion for Summary Judgment, ECF No. 51, and Response to Renewed Motion for Summary Judgment, ECF No. 53, relying on their prior briefing materials submitted in consideration of Defendant's Motion for Summary Judgment.

The Motion for Summary Judgment has been fully briefed, and it is now ripe for consideration.

## III.   LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure provides that: "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue of material fact is in genuine dispute if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Doe v. Abington Friends Sch., 480 F.3d 252, 256 (3d Cir. 2007) ("A genuine issue is present when a reasonable trier of fact, viewing all of the record evidence, could rationally find in favor of the non-moving party in light of his burden of proof"). Thus, summary judgment is

---

[3] The Court imposed a brief administrative stay due to the judicial reassignment of this action, in order to provide the Court an opportunity to conduct a thorough review of the case and the previously filed Motion for Summary Judgment. ECF No. 47.

warranted where, "after adequate time for discovery and upon motion . . . a party . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Marten v. Godwin, 499 F.3d 290, 295 (3d Cir. 2007) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)).

The moving party bears the initial burden of demonstrating to the court that there is an absence of evidence to support the non-moving party's case. Celotex, 477 U.S. at 322; see also Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 140 (3d Cir. 2004). "[W]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Scott v. Harris, 550 U.S. 372, 380 (2007) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986)) (internal quotations omitted).

In deciding a summary judgment motion, a court must view the facts in the light most favorable to the nonmoving party and must draw all reasonable inferences, and resolve all doubts in favor of the nonmoving party. Matreale v. N.J. Dep't of Military & Veterans Affairs, 487 F.3d 150, 152 (3d Cir. 2007); Woodside v. Sch. Dist. of Phila. Bd. of Educ., 248 F.3d 129, 130 (3d Cir. 2001).

### IV. DISCUSSION

In her Brief in Opposition, Plaintiff "withdraws all claims except her retaliation claims based on the February 27, 2017 written warning and the March 1, 2017 denial of route adjustment," which are set forth in Count II of Plaintiff's Complaint. ECF No. 38 at 1. Accordingly, the Court grants Defendant's Motion for Summary Judgment as to all claims other

than Plaintiff's retaliation claim based on Plaintiff's receipt of the Letter of Warning and denial of route inspection.[4]

With respect to Plaintiff's remaining retaliation claims, Defendant advances three arguments in support of its Motion for Summary Judgment: (1) Plaintiff failed to exhaust her administrative remedies; (2) Plaintiff cannot establish a *prima facie* case of retaliation; and (3) Plaintiff cannot establish Defendant's reasons for the actions at issue were pretextual. For the reasons set forth below, the Court disagrees that summary judgment is proper on these bases, and therefore denies Defendant's Motion for Summary Judgment as to the two remaining claims.

### A. Plaintiff Exhausted Her Administrative Remedies.

The ADEA does not expressly require exhaustion of administrative remedies for federal employees. As the United States Supreme Court has explained, "[Section] 15 of the ADEA provides two alternative routes for pursuing a claim of age discrimination. An individual may invoke the EEOC's administrative process and then file a civil action in federal district court if [s]he is not satisfied with [her] administrative remedies." Stevens v. Dep't of Treasury, 500 U.S. 1, 5-6 (1991) (citing 29 U.S.C. § 633a(b) and (c)). Alternatively, an individual "can decide to present the merits of [her] claim to a federal court in the first instance," as long as she has given the EEOC at least 30 days' notice of her intent to file suit and the suit is filed within 180 days of the discriminatory act. Id. (citing 29 U.S.C. § 633a(d)).

The relevant test in determining whether administrative remedies have been exhausted with respect to a particular claim is whether the acts alleged in the complaint "are fairly within the scope of the prior EEOC complaint, or the investigation arising therefrom." Antol v. Perry,

---

[4] Although Plaintiff refers to maintaining her claim arising out of the "denial of route adjustment" on March 1, 2017, her Complaint in this action and her EEO Complaint rely on the cancellation/denial of a route *inspection* on or about March 1, 2017, which Plaintiff argues here resulted in her not receiving a necessary route adjustment. See ECF No. 26 ¶ 11B; ECF No. 26-1 at 1.

82 F.3d 1291, 1295 (3d Cir. 1996) (citing Waiters v. Parsons, 729 F.2d 233, 237 (3d Cir. 1984)); see also Anjelino v. N.Y. Times Co., 200 F.3d 73, 94 (3d Cir. 1999).

In her Motion for Summary Judgment, Defendant argues that Plaintiff failed to exhaust her administrative remedies with respect to Count II. ECF No. 34 at 21-22. In this action, Plaintiff alleges retaliatory acts (specifically, the issuance of the Letter of Warning and denial of a route inspection) because Plaintiff complained to the EEO in 2016 about discrimination against her. Because Plaintiff's underlying 2016 EEO Complaint arises out of protected activity in 2009 to 2013—and not the 2016 EEO Complaint itself, Defendant argues, Plaintiff has failed to exhaust her administrative remedies with respect to this claim.

As Plaintiff correctly points out, however, in her EEO Complaint, dated December 5, 2016, Plaintiff alleges that she was retaliated against for filing EEO complaints, and she specifically amended her EEO Complaint on March 3, 2017 to incorporate allegations that the Letter of Warning and denial of route inspection were retaliatory acts. Thus, Plaintiff's claim, alleging these two actions were done in retaliation for Plaintiff's pursuit of charges with the EEO, is fairly within the scope of the prior investigation arising out of the operative EEO Complaint. Therefore, Plaintiff has exhausted her administrative remedies, and the Court will address the merits of Plaintiff's retaliation claim below.

B.     **Plaintiff's *Prima Facie* Case**

Defendant argues that Plaintiff cannot establish a *prima facie* claim for retaliation. The anti-retaliation provision of the ADEA provides:

> It shall be unlawful for an employer to discriminate against any of his employees . . . because such individual . . . has opposed any practice made unlawful by this section, or because such individual . . . has made a charge, testified, assisted or participated in any manner in an investigation, proceedings, or litigation under this chapter.

29 U.S.C. § 623(d).

Where, as here, there is no direct evidence of retaliation in violation of the ADEA, the Court employs the McDonnell Douglas burden-shifting framework. Daniels v. Sch. Dist. of Phila., 776 F.3d 181, 193 (3d Cir. 2015). Under this framework, plaintiff first must establish a *prima facie* case of retaliation by presenting evidence sufficient to permit a rational trier-of-fact to find: (1) that she engaged in prior protected activity; (2) the employer took adverse action either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the plaintiff's protected activity and the employer's adverse action. Id.

If Plaintiff makes this *prima facie* showing, the burden then shifts to the employer to provide a legitimate, non-retaliatory reason for the adverse action. Id. If the employer does so, the burden shifts back to the plaintiff to convince the factfinder both that "the employer's proffered explanation was false, and that retaliation was the real reason for the adverse employment action." Id. Although the burden of production shifts, Plaintiff maintains the ultimate burden of persuasion at all times. Id.

1. **Protected Activity**

With respect to Plaintiff's *prima facie* case, the parties do not dispute that Plaintiff has established the first element, engaging in protected activity, as a result of her filing the EEO Complaint on December 5, 2016. ECF No. 34 at 23; see also Daniels, 776 F.3d at 193 (holding that protected activity includes an employee's filing of formal charges of discrimination against an employer).

2. **Adverse Employment Action**

In order to establish an "adverse action," Plaintiff "must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well

might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington N. & Santa Fe Ry Co. v. White, 548 U.S. 53, 68 (2006) (internal quotations omitted).[5] The Court views the challenged conduct "from the perspective of a reasonable person in the plaintiff's position, considering 'all the circumstances.'" Id. at 71 (quoting Oncale v. Sundower Offshore Servs., Inc., 523 U.S. 75, 81 (1998)). "The question whether a retaliatory action is 'materially adverse' under Burlington Northern is a question of fact." Prise v. Alderwoods Grp., Inc., 657 F. Supp. 2d 564, 607-08 (W.D. Pa. 2009).

Here, Defendant argues that the two retaliatory acts alleged (denial of route inspection and issuance of the Letter of Warning) do not qualify as "materially adverse," because they did not "tangibly alter the terms and conditions" of Plaintiff's employment, and because Plaintiff chose not to appeal from the issuance of the letter. ECF No. 34 at 25; ECF No. 45 at 3. Defendant also argues that Plaintiff fails to produce any evidence that she was denied a requested sick leave day in February 2017. ECF No. 34 at 26.

Contrary to Defendant's argument, however, "adverse actions" with respect to an ADEA retaliation claim are not limited to "acts that tangibly alter an employee's compensation, terms, conditions or privileges of employment." As Plaintiff correctly points out, the United States Supreme Court modified this standard in Burlington Northern, where it held that the retaliation provision "is not limited to discriminatory actions that affect the terms and conditions of employment." Burlington Northern, 548 U.S. at 64 (emphasis added); see also Moore v. City of Phila, 461 F.3d 331, 341 (3d Cir. 2006); Hempfling v. United Refining Co. of Pa., No. 06-334,

---

[5] Although Burlington Northern arises out of a Title VII retaliation claim, because the anti-retaliation provisions of the ADEA and Title VII are nearly identical, "retaliation claims under the ADEA are analyzed under the same analysis as Title VII." Hempfling v. United Refining Co. of Pa., No. 06-334, 2008 WL 201900, at *6 n. 19 (W.D. Pa. Jan. 23, 2008); see also Fogleman v. Mercy Hosp., Inc., 283 F.3d 561 (3d Cir. 2002) ("Because the anti-retaliation provisions of the ADA and ADEA are nearly identical, as is the anti-retaliation provision of Title VII, we have held that precedent interpreting any one of these statutes is equally relevant to interpretation of the others.").

2008 WL 201900, at *8 (W.D. Pa. Jan. 23, 2008) ("In point of fact, the Court in <u>Burlington Northern</u> found that Title VII's anti-retaliation provision does not merely prohibit an employer from discriminating against an individual 'with respect to his compensation, terms, conditions, or privileges of employment.' On the contrary, <u>Burlington Northern</u> found that the retaliation statute 'sweeps broadly enough to prohibit other 'materially adverse' actions taken in retaliation for activity protected under the statute.'"). Rather, as noted above, Plaintiff must show that the alleged retaliatory actions are "materially adverse," in that they "might well have dissuaded a reasonable worker from making or supporting a charge of discrimination." <u>Burlington Northern</u>, 548 U.S. at 68.

Under this standard, a reasonable jury could conclude that the Letter of Warning and denial of route inspection are materially adverse. The Letter of Warning is a disciplinary action against Plaintiff, and it warns that future job-related deficiencies could lead to suspension or termination. Courts have held that similar disciplinary actions can be considered materially adverse particularly where, as here, plaintiff alleges that this misconduct did not consistently result in discipline. <u>See, e.g.</u>, <u>Rivers v. Potter</u>, No. 05-4868, 2007 WL 4440880, at *9 (D. N.J. Dec. 18, 2007) (denying summary judgment on Title VII retaliation claim, concluding that USPS letter of warning could be found materially adverse); <u>Hempfling</u>, 2008 WL 201900, at *9 (finding that, in an ADEA retaliation claim, a reasonable factfinder could conclude that the "write-ups" received by plaintiff, but not by his coworker for the same misconduct, are materially adverse); <u>Millea v. Metro-North R. Co.</u>, 658 F.3d 154, 165 (2d Cir. 2011) ("A formal reprimand issued by an employer is not a 'petty slight,' 'minor annoyance,' or 'trivial' punishment; it can reduce an employee's likelihood of receiving future bonuses, raises, and promotions and it may lead the employee to believe (correctly or not) that his job is in

jeopardy"). To the extent Defendant suggests that the Letter of Warning is not materially adverse because Plaintiff chose not to appeal its issuance, ECF No. 45 at 3, Defendant offers no support for this argument and, to the contrary, the existence of an appeals process appears to support the seriousness of the charge.

As to the denial of route inspection, Defendant does not provide any detailed argument. Plaintiff claims that, as a result of this action, she did not receive necessary assistance to perform her job. Specifically, Plaintiff argues that if a route adjustment had been made based on the inspection, Plaintiff would have received up to an hour and a half of assistance with her route each day. As such, Plaintiff asserts that being denied such a significant amount of assistance on a daily basis is materially adverse. Thus, as to the second element, Plaintiff has presented sufficient evidence that she was subjected to an adverse action soon after the filing of her EEO Complaint.

### 3. Causal Connection

Courts consider "a broad array of evidence in determining whether a sufficient causal link exists [for a plaintiff] to survive a motion for summary judgment." Daniels, 776 F.3d at 196 (internal quotations omitted). A plaintiff may rely on temporal proximity between the protected activity and the employer's adverse action if the proximity is "unusually suggestive." Id. If the temporal proximity is not "unusually suggestive," however, the Court considers "the circumstances as a whole, including any intervening antagonism by the employer, inconsistencies in the reasons the employer gives for its adverse action, and any other evidence suggesting that the employer had a retaliatory animus when taking the adverse action." Id.

Here, Defendant argues that Plaintiff cannot establish a causal connection between the retaliatory actions alleged and Plaintiff's filing of her EEO Complaint. Defendant notes that

there are no statements Plaintiff can point to, either direct or indirect, "which would permit the inference of a causal connection." ECF No. 34 at 26. Moreover, Plaintiff asserts that Rinderle's purported mistreatment began prior to the filing of Plaintiff's 2016 EEO Complaint, such that a jury could not infer causation simply from her alleged treatment of Plaintiff. ECF No. 45 at 4.

In opposition, Plaintiff argues that she can establish a causal connection between her protected activity and the adverse actions through evidence of a pattern of antagonism, including Rinderle's harassment, which Plaintiff alleges worsened after her EEO Complaint, and Rinderle's denial of Plaintiff's request for leave. ECF No. 38 at 8-9. Plaintiff also contends that other circumstantial evidence supports an inference of causation, including Rinderle's disciplining Plaintiff, but not others, for failing to submit 3996 Forms, and both refusing to inform Plaintiff of the 3996 Form policy and not allowing Plaintiff to count her mail during the route inspection, which Plaintiff claims sabotaged her ability to receive a necessary route adjustment. Id. at 10-13.

The Court takes note of the temporal proximity between the filing of the EEO Complaint on December 5, 2016 and the issuance of the Letter of Warning on February 27, 2017 and the denial of route inspection on March 1, 2017. While the timing alone between Plaintiff's EEO complaint and the retaliatory acts alleged (approximately three months) is not "unusually suggestive" of retaliatory animus, the temporal proximity, in addition to circumstantial evidence of alleged hostility and disparate treatment are sufficient to raise a question of fact for the jury. See Holt v. Pennsylvania, 683 F. App'x 151, 158 (3d Cir. 2017) ("Moreover, while the temporal proximity between the protected activity and [the employer's] decision, which was about two months, might not be sufficient on its own to support a retaliator inference, it was certainly

16

relevant."). Accordingly, the Court finds that Plaintiff has presented sufficient evidence of temporal proximity between the two protected activities and the adverse action.

Therefore, based on consideration of the evidence presented, the Court finds that Plaintiff has presented sufficient evidence to present a reasonable trier of fact to find that Plaintiff has made requisite showing of a *prima facie* case of retaliation in violation of the ADEA.

### C. Pretext

The parties do not dispute that Defendant has proffered a legitimate non-discriminatory reason for denying Plaintiff's route inspection and issuing the Letter of Warning. Therefore, the burden now shifts back to Plaintiff to show that Defendant's reasons are pretextual.

In order to establish pretext, Plaintiff must submit evidence "from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Fuentes v. Perskie, 32 F.3d 759, 765 (3d Cir. 1994). To proceed under the first prong, the plaintiff must demonstrate such "weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact-finder *could* rationally find them unworthy of credence, and hence infer that the employer did not act for [the asserted] non-discriminatory reasons." Id. (internal citations omitted).

Here, the record presents a genuine issue of material fact as to whether Defendant's articulated reasons are pretextual. With respect to the Letter of Warning, Defendant argues that this disciplinary action was warranted, because Plaintiff repeatedly violated overtime rules by "taking" overtime without authorization and failing to complete the appropriate paperwork (the 3996 Forms) to request overtime. ECF No. 45 at 6. However, Plaintiff raises facts from which a

jury could disbelieve Defendant's stated rationale, including that others were not similarly disciplined, and that Rinderle never informed Plaintiff of her policy for completing the 3996 Forms before issuing the letter.

Regarding the denial of route inspection, Defendant relies on Hrip's stated rationale for cancelling the route inspection, including: (1) Plaintiff failed to fill out the form indicating the length of time it took her to count her mail; (2) Plaintiff ran overtime on her routes and did not complete 3996 Forms, leading management to believe she had completed her route in 8 hours on those days; (3) the discrepancies in her route times were unexplained, given that the mail volume was similar on those days. Defendant further argues that Hrip did not know about Plaintiff's EEO Complaint, so he could not have cancelled the route inspection in order to retaliate against Plaintiff. ECF No. 45 at 8. While the lack of evidence that Hrip was aware of Plaintiff's EEO Complaint renders this a closer call, to the extent that Plaintiff argues the outcome was caused by Rinderle's efforts to retaliate against her, the Court finds there is sufficient evidence to withstand summary judgment.

## V. CONCLUSION

For the foregoing reasons, the Court denies Defendant's Motion for Summary Judgment with respect to Plaintiff's retaliation claim based on Plaintiff's receipt of the Letter of Warning and denial of route inspection. Because Plaintiff has withdrawn all other claims, the Court grants summary judgment with respect to any remaining claims.

## ORDER

AND NOW this _16th_ day of _October_, 2019, it is hereby ORDERED that Defendant's Renewed Motion for Summary Judgment, ECF No. 51, is GRANTED IN PART and DENIED IN PART. The Court denies Defendant's Motion for Summary Judgment with respect to

18

Plaintiff's ADEA retaliation claim based on the issuance of the Letter of Warning on February 27, 2017, and denial of route inspection on March 1, 2017. Summary judgment is granted as to all other claims, and they are therefore dismissed.

Dated: October 16, 2019

BY THE COURT,

MAUREEN P. KELLY
UNITED STATES MAGISTRATE JUDGE

cc: All counsel of record via CM/ECF